*Sanchez*

JS 44 (Rev 06/17)

# CIVIL COVER SHEET

18-5465

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Westcor Land Title Insurance Company

**DEFENDANTS**
Paradigm Title Group, LLC, d/b/a
Paradigm Abstract of PA LLC

5468F

**(b)** County of Residence of First Listed Plaintiff    Orange
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Middlesex
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Gregory J. Allard, Esquire, J. Scott Watson, P.C., 24 Regency
Plaza, Glen Mills, PA 19342, (610) 358-9600

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U S Government
       Plaintiff

☐X 3  Federal Question
       *(U.S. Government Not a Party)*

☒ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

☐ 2  U S Government
       Defendant

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐X 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
28 U.S.C. § 1332
Brief description of cause
Diversity / Amount in controversy exceeds $75,000

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:**  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DEC 18 2018

DATE  12/17/18

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**18    5465**

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff  875 Concourse Parkway South, Suite 200, Maitland, Florida 32751

Address of Defendant  3 Jocama Boulevard, Suite 200B, Old Bridge, New Jersey 08857

Place of Accident, Incident or Transaction  Philadelphia, Pennsylvania

---

**RELATED CASE, IF ANY:**

Case Number _____  Judge _____  Date Terminated _____

Civil cases are deemed related when *Yes* is answered to any of the following questions.

1  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [ ]

2  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [ ]

3  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [ ]

4  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [ ]

I certify that, to my knowledge, the within case [ ] is [✓] is not related to any case now pending or within one year previously terminated action in this court except as noted above

DATE  12/19/18    92218
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL** (Place a √ in one category only)

**A   Federal Question Cases:**

[ ] 1  Indemnity Contract, Marine Contract, and All Other Contracts
[ ] 2  FELA
[ ] 3  Jones Act-Personal Injury
[ ] 4  Antitrust
[ ] 5  Patent
[ ] 6  Labor-Management Relations
[ ] 7  Civil Rights
[ ] 8  Habeas Corpus
[ ] 9  Securities Act(s) Cases
[ ] 10  Social Security Review Cases
[ ] 11  All other Federal Question Cases
      *(Please specify)*

**B   Diversity Jurisdiction Cases:**

[✓] 1  Insurance Contract and Other Contracts
[ ] 2  Airplane Personal Injury
[ ] 3  Assault, Defamation
[ ] 4  Marine Personal Injury
[ ] 5  Motor Vehicle Personal Injury
[✓] 6  Other Personal Injury *(Please specify)* _____
[ ] 7  Products Liability
[ ] 8  Products Liability – Asbestos
[ ] 9  All other Diversity Cases
      *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Gregory J. Allard , counsel of record or pro se plaintiff do hereby certify

[✓]  Pursuant to Local Civil Rule 53.2 § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs

[ ]  Relief other than monetary damages is sought

DEC 18 2018

DATE  12/18/2018    92218
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ 609 (5/2018)

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Westcor Land Title Insurance Company | : | CIVIL ACTION |
| Paradigm Title Group, LLC, | : | **18** **5465** |
| et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

| | | |
|---|---|---|
| December 17, 2018 | Gregory J. Allard | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 358-9600 | (610) 358-9601 | gregory.allard@jscott watson.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC 18 2018



## JS

### IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF PENNSYLVANIA



| | | |
|---|---|---|
| WESTCOR LAND TITLE INSURANCE COMPANY | : | **18   5465** |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: _____ |
| | : | |
| PARADIGM TITLE GROUP, LLC d/b/a PARADIGM ABSTRACT OF PA LLC | : | |
| Serve: | : | |
| Incorp Services Inc. (Registered Agent) | : | |
| 7208 Red Top Road | : | |
| Hummelstown, PA 17036 | : | |
| | : | |
| Defendant. | : | |



### COMPLAINT

Plaintiff Westcor Land Title Insurance Company ("Westcor"), by counsel, hereby asserts

this Complaint against Defendant Paradigm Title Group, LLC, d/b/a Paradigm Abstract of PA

LLC ("Paradigm"), and states as follows:

### Parties

1.     Westcor is a South Carolina insurance company with its principal office located at

875 Concourse Parkway South, Suite 200, Maitland, Florida.

2.     Upon information and belief, Paradigm is a limited liability company organized

under the laws of New Jersey, with its principal place of business in Old Bridge, New Jersey.

3.     Paradigm is registered as a foreign limited liability company in the

Commonwealth of Pennsylvania as "Paradigm Abstract of PA LLC," at Entity No. 6352868.

**Jurisdiction and Venue**

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Westcor and Paradigm are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Paradigm because it transacts substantial business in the Commonwealth of Pennsylvania.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this lawsuit concerns title services concerning property in Philadelphia County, Pennsylvania, a judicial district in which a substantial part of the events or omissions giving rise to Westcor's claims occurred.

**Facts**

7.      Westcor is a corporation engaged in the business of underwriting and issuing title insurance policies, and is authorized to transaction business in Pennsylvania as a licensed title insurer.

8.      At all relevant times, Paradigm served as a title insurance producer to issue title insurance policies on behalf of Westcor.

9.      Paradigm's obligations are more particularly described in that certain Issuing Agency Agreement dated February 25, 2011, between Paradigm and Westcor (the "Agency Agreement"). A true and accurate copy of the Agency Agreement is attached hereto as **EXHIBIT A**.

10.      Jason Walters signed the Agency Agreement as President of Paradigm.

11.      Under the Agency Agreement, Paradigm agreed to serve as Westcor's agent to receive and process applications for title insurance policies and issue title insurance policies in accordance with recognized title insurance underwriting practices.

12.     The Agency Agreement provides that Paradigm shall "process applications for title insurance and issue policies related thereto in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices . . ." *See* Ex. A (Agency Agreement) at at § 2(b).

13.     Pursuant to the Agency Agreement, Paradigm agreed to "[c]omply with all requirements established by [Westcor] and/or in accordance with recognized title insurance underwriting practices and/or those imposed by the Department of Insurance regarding search and examination of title and the clearance of objections or exceptions to title prior to binding [Westcor] under any Policy." *Id.* at §2(d).

14.     The Agency Agreement provides that Paradigm "shall be liable to [Westcor], for and hereby agrees to indemnify [Westcor] against all loss, cost, or expense, including attorney's fees and costs of litigation . . . arising from: 1) . . . conduct that would constitute a breach of this Agreement, or negligence of [Paradigm] or any agent servant or employee of [Paradigm]; or (2) the failure of [Paradigm] to comply with the terms of this Agreement or with the rules, regulations or instructions given to [Paradigm] by [Westcor]; or . . . 4) any other actual or alleged act or omission by [Paradigm], or any agent, servant or employee of [Paradigm], whether or not occurring in connection with the issuance of a Policy." *Id.* at § 14(a).

15.     The Agency Agreement provides that Paradigm "shall maintain, at [Paradigm's] expense, Title Insurance Agent's Errors and Omissions insurance, including coverage for opinions of title, in the minimum face amount of $1,000,000.00 in such form and with such carrier acceptable to [Westcor]. Upon demand, [Paradigm] shall furnish proof of such insurance coverage to [Westcor]. [Paradigm] agrees to immediately notify its insurance carriers in the event of any covered claim." *Id.* at § 14(b).

16.     The Agency Agreement provides that Paradigm shall "pay all costs and expenses, including reasonable attorney's fees which arise from enforcement of the terms of the Agreement." *Id* at § 28.

*Transaction*

17.     On information and belief, Paradigm agreed to handle a certain real estate transaction (the "Transaction") between 1923 Gerritt LLC ("Seller") as seller and CDP Gerritt LLC ("Insured") as buyer, whereby Seller would sell and convey certain real property commonly known as 1923 Gerritt Street, Philadelphia, Pennsylvania 19146 (the "Property").

18.     The closing for the Transaction was to occur on December 15, 2017 (the "Closing").

19.     On or about August 30, 2017, Paradigm issued a commitment for title insurance in the name of Westcor to the Insured in connection with the Transaction (the "Title Commitment").

20.     The Title Commitment required "[p]ayment of all taxes, charges, assessments, levied and assessed against the [Property], which are due and payable," and "[payment] of all taxes, gas, water and sewer rents and assessments, if any, both current and past due."

21.     The Title Commitment required that a deed for the Property be executed, delivered, and duly filed for record from the Seller's purported predecessors in title, David A. Hayes and Marie Hayes, his wife; as well as a deed from Seller to the Insured.

22.     Prior to the Closing, a title search revealed that delinquent taxes owed by the Property's owners were levied against the Property, and that a foreclosure of such tax lien was pending.

23.     Prior to the Closing, Paradigm obtained a lien search showing outstanding liens (the "Lien Search"), which indicated delinquent taxes for over a decade, indicated that water/sewer

charges were due, and indicated that water services had been discontinued at the Property and had not been active for 14 years.

24.     According to the Lien Search, amounts due were for $3,532.96 for the tax years 1993-1996, and $7,318.37 for the tax years 1997-2016.

25.     The Lien Search further provided that the amounts due were good through November 30, 2017.

26.     On information and belief, Paradigm took no further action to investigate the status of the liens, including the status of the Property.

27.     Further, the Title Commitment issued by Paradigm indicated that decades of judgments and liens against the either or both of Seller's predecessor's in title were filed and remained unpaid, since at least as early as 1993.

28.     The Closing occurred on December 15, 2017.

29.     As part of the Closing, Paradigm caused to be issued a policy of title insurance in the name of Westcor to the Insured in connection with the Transaction (the "Title Policy").

30.     Paradigm failed to perform an updated docket search or obtain an updated lien search and/or payoff statement for such liens prior to the Closing.

31.     On or about January 5, 2018, the Insured submitted a claim (the "Claim") to Westcor pursuant to the Title Commitment and Title Policy, advising that on December 7, 2017, prior to the Closing, the Property had been sold to a third-party purchaser at a tax sale (the "Tax Sale"), and that title in fee simple to the Property could not be conveyed to the Insured.

32.     The docket reflecting the tax sale was updated on or about December 11, 2017, prior to the Closing.

33.    Had Paradigm obtained updated information at Closing it would have discovered the Tax Sale, would have discovered that Seller had no interest in the Property, and therefore could not consummate the transaction, and a title policy would not issue.

34.    The Title Commitment also identified the tax sale litigation which resulted in the Tax Sale.

35.    Had Paradigm properly cleared the transaction, it would have discovered that the Property has been sold at Tax Sale.

36.    Further, the extent of outstanding liens and discontinued water service should have alerted Paradigm that the Seller was attempting a quick-sale of the Property, and to confirm the valid transfer of title prior to disbursement of settlement funds, and prior to issuing the Title Policy.

37.    Given the volume and status of liens on the Lien Search, as well as the absence of a water account for water service at the Property, and indications on the Title Commitment, Paradigm failed to properly investigate and clear status of liens and water service, and thereby should have discovered the suspect nature of Seller's title, and halted the transaction.

38.    As a result of Paradigm's failure to obtain updated information at Closing, Westcor would not have issued a Title Policy, or be subject to the Claim.

39.    Westcor paid $115,500 to the Insured to resolve the Claim pursuant to its obligations under the Title Commitment and Title Policy.

40.    Westcor did not make such settlement as an intermeddler or volunteer.

41.    Ultimately, in connection with the resolution of the Insured's Claim, Westcor incurred losses and expenses totaling $120,807.25, including amounts contributed to resolve the claim made by the Insured, and attorney's fees incurred (the "Westcor Loss").

42.     Given the volume and status of liens, as well as the terminated status, had Paradigm investigated the status of liens and terminated water service, Paradigm was on notice of defects in the title and should have discovered, disclosed, and halted the transaction.

43.     Further, had Paradigm obtained updated lien information at Closing, Westcor would have nonetheless avoided the Westcor Loss.

44.     Upon payment of the Insured's Claim, Westcor is legally, contractually and equitably subrogated to the Insured's rights, including Insured's rights against Paradigm.

## Count I
## (Negligence, as Subrogee)

45.     All allegations of all preceding paragraphs are incorporated herein as if fully stated.

46.     Westcor asserts this Count I as Subrogee of the Insured.

47.     As settlement agent, Paradigm accepted and owed the Insured a duty of care to comply with recognized title insurance underwriting practices and/or those imposed by the Department of Insurance regarding search and examination of title and the clearance of objections or exceptions to title prior to the Closing.

48.     Paradigm had a duty to act for the benefit of the Insured and ensure that it complied with all the requirements under the Title Commitment related to the Transaction.

49.     Paradigm's failure to obtain an updated payoff or perform an updated docket search prior to the Closing, and failure to properly clear the requirements indicated on the Title Commitment, constitutes a breach of Paradigm's duty to the Insured.

50.     Had Paradigm sought an updated payoff or performed an updated docket search at Closing, or had Paradigm properly cleared requirements indicated on the Title Commitment, it would

have discovered the Tax Sale, and that the Seller had no title to convey to the Insured, and the Transaction would have been halted.

51.     As a direct and proximate result of Paradigm's failure to obtain updated lien payoff, or perform an updated docket search, or properly clear the requirements indicated on the Title Commitment, the Insured was unable to obtain title to the Property.

52.     Given the volume and status of liens on the Lien Search, as well as the absence of a water account for water service at the Property, and indication of the Tax Sale case on the Title Commitment, Paradigm failed to properly investigate and clear the status of liens and water service, and thereby should have discovered the suspect nature of Seller's title, and halted the Transaction.

53.     Thus, the circumstances of the status of liens and water service provided an additional opportunity to investigate the circumstances of the sale, avoid the Transaction, and Paradigm was also negligent and breached its duty of care to the Insured in failing to investigate the circumstances of the Transaction, and in failing to clear requirements indicated on the Title Commitment.

54.     As a direct and proximate result of Paradigm's negligence, the Insured suffered financial and economic losses in the amount of $120,807.25 against Paradigm.

55.     Westcor is subrogated to the rights of the Insured to seek recovery from Paradigm for Paradigm's negligence.

## Count II
## (Breach of Contract, as Subrogee)

56.     All allegations of all preceding paragraphs are incorporated herein as if fully stated.

57.     Paradigm agreed with Insured that it would serve as settlement agent in connection with the Transaction.

58.     As settlement agent, Paradigm was obligated to comply with all recognized title insurance underwriting practices, and/or those imposed by the Department of Insurance, regarding search and examination of title and the clearance of objections or exceptions to title prior to the Closing.

59.     Paradigm's failure to obtain an updated payoff or perform an updated docket search prior to the Closing, and clear all title exceptions and requirements, constitutes a breach of Paradigm's obligations under such agreement.

60.     As a direct and proximate result of Paradigm's failure to obtain updated lien payoff, or perform an updated docket search, or properly clear title exceptions and requirements, and breach of its obligations under such agreement, the Insured was unable to obtain title to the Property.

61.     Given the volume and status of liens on the Lien Search, as well as the absence of a water account for water service at the Property, and indications on the Title Commitment, Paradigm failed to properly investigate and clear the status of liens and water service, and thereby should have discovered the suspect nature of Seller's title, and halted the Transaction.

62.     Thus, the circumstances of the status of liens and water service provided an additional opportunity to avoid the Transaction, and Paradigm's failure to discover and disclose the status of liens and terminated water service, and halt the Transaction, constitutes further breach of its obligations under such agreement.

63.     As a direct and proximate result of Paradigm's breach, the Insured suffered financial and economic losses in the amount of $120,807.25 against Paradigm, which loss was paid by Westcor.

64.     Westcor is subrogated to the rights of the Insured to seek recovery from Paradigm for Paradigm's breach.

## Count III
## (Negligence)

65.     All allegations of all preceding paragraphs are incorporated herein as if fully stated.

66.     Paradigm was engaged to perform and had a duty to perform all reasonable and necessary duties as Westcor's issuing agent.

67.     Paradigm owed Westcor a duty of care to comply with recognized title insurance underwriting practices and/or those imposed by the Department of Insurance regarding search and examination of title and the clearance of objections or exceptions to title prior to the Closing.

68.     Paradigm had a duty to "comply with the terms of [the Agency Agreement] or with the rules, regulations or instructions given to [Paradigm] by [Westcor]." *See* Ex. A (Agency Agreement) at § 14(a).

69.     Paradigm had a duty to act for the benefit of Westcor and ensure that it complied with all requirements under the Title Commitment related to the Transaction.

70.     Paradigm's failure to obtain an updated payoff or perform an updated docket search prior to the Closing constitutes a breach of Paradigm's duty to Westcor.

71.     Had Paradigm sought an updated payoff or performed an updated docket search at Closing, it would have discovered the Tax Sale, and that the Seller had no title to convey to the Insured, and the transaction would have been halted.

72.     As a direct and proximate result of Paradigm's failure to obtain updated lien payoff, or perform an updated docket search, Westcor insured the Transaction involving a complete failure of title, resulting in the Westcor Loss.

73.     Given the volume and status of liens on the Lien Search, as well as the absence of a water account for water service at the Property, and indications on the Title Commitment, Paradigm

failed to properly investigate and clear the status of liens and water service, and thereby should have discovered the suspect nature of Seller's title, and halted the Transaction.

74.    Thus, the circumstances of the status of liens and water service provided an additional opportunity to investigate the circumstances of the sale, avoid the Transaction, and Paradigm was also negligent and breached its duty of care to Westcor in failing to investigate the circumstances of the Transaction.

75.    As a direct and proximate result of Paradigm's negligence, Westcor suffered financial and economic losses in the amount of $120,807.25 against Paradigm, plus costs, expenses and attorneys' fees, and such other relief as may be just and proper.

**Count IV**
**(Breach of Contract)**

76.    All allegations of all preceding paragraphs are incorporated herein as if fully stated.

77.    Pursuant to the Agency Agreement, Paradigm agreed to "process applications for title insurance and issue policies related thereto in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices . . ." Ex. A (Agency Agreement) at § 2(b).

78.    Pursuant to the Agency Agreement, Paradigm agreed to "[c]omply with all requirements established by [Westcor] and/or in accordance with recognized title insurance underwriting practices and/or those imposed by the Department of Insurance regarding search and examination of title and the clearance of objections or exceptions to title prior to binding [Westcor] under any Policy." *Id.* at §2(d).

79.    The Agency Agreement provides that Paradigm "shall be liable to [Westcor], for and hereby agrees to indemnify [Westcor] against all loss, cost, or expense, including attorney's fees and costs of litigation . . . arising from: 1) . . . conduct that would constitute a breach of this Agreement,

or negligence of [Paradigm] or any agent servant or employee of [Paradigm]; or (2) the failure of [Paradigm] to comply with the terms of this Agreement or with the rules, regulations or instructions given to [Paradigm] by [Westcor]; or . . . 4) any other actual or alleged act or omission by [Paradigm], or any agent, servant or employee of [Paradigm], whether or not occurring in connection with the issuance of a Policy." *Id.* at § 14(a).

80.     Paradigm's failure to obtain an updated payoff or perform an updated docket search prior to the Closing constitutes a breach of Paradigm's obligations under the Agency Agreement.

81.     As a direct and proximate result of Paradigm's failure to obtain updated lien payoff or perform an updated docket search, and breach of its obligations under the Agency Agreement, Westcor insured the Transaction involving a complete failure of title, resulting in the Westcor Loss.

82.     Given the volume and status of liens on the Lien Search, as well as the absence of a water account for water service at the Property, and indications on the Title Commitment, Paradigm failed to properly investigate and clear the status of liens and water service, and thereby should have discovered the suspect nature of Seller's title, and halted the Transaction.

83.     Thus, the circumstances of the status of liens and water service provided an additional opportunity to avoid the Transaction, and Paradigm's failure to discover and disclose the status of liens and terminated water service, and halt the Transaction, constitutes further negligence and breach of its obligations under the Agency Agreement.

84.     As a direct and proximate result of Paradigm's breaches, Westcor suffered financial and economic losses in the amount of $120,807.25 against Paradigm, plus costs, expenses and attorneys' fees, and such other relief as may be just and proper.

## Count V
## (Breach of Fiduciary Duty)

85.     All allegations of all preceding paragraphs are incorporated herein as if fully stated.

86.     Paradigm agreed to act in a fiduciary capacity for Westcor.

87.     Specifically, pursuant to the Agency Agreement, Paradigm agreed to act as, and was in fact acting as, Westcor's fiduciary for purposes of issuing title insurance policies and commitments.

88.     Paradigm had a duty to act for the benefit of Westcor, and "comply with the terms of [the Agency Agreement] or with the rules, regulations or instructions given to [Paradigm] by [Westcor]."

89.     Paradigm's failure to obtain an updated payoff or perform an updated docket search prior to the Closing constitutes a breach of Paradigm's fiduciary duty to Westcor.

90.     Given the volume and status of liens on the Lien Search, as well as the absence of a water account for water service at the Property, and indications on the Title Commitment, Paradigm failed to property investigate and clear the status of liens and water service, and thereby should have discovered the suspect nature of Seller's title, and halted the Transaction.

91.     Thus, the circumstances of the status of liens and water service provided an additional opportunity to avoid the Transaction, and Paradigm was also negligent and breached its fiduciary duty to Westcor in failing to investigate the circumstances of the Transaction.

92.     As a direct and proximate result of Paradigm's breaches, Westcor suffered financial and economic losses in the amount of $120,807.25 against Paradigm, plus costs, expenses and attorneys' fees, and such other relief as may be just and proper.

## Count VI
### (Indemnity)

93.     All allegations of all preceding paragraphs are incorporated herein as if fully stated.

94.     As settlement agent in connection with the Transaction, Paradigm agreed that it "shall be liable to [Westcor], for and hereby agrees to indemnify [Westcor] against all loss, cost, or expense, including attorney's fees and costs of litigation . . . arising from: 1) . . . conduct that would constitute a breach of this Agreement, or negligence of [Paradigm] or any agent servant or employee of [Paradigm]; or (2) the failure of [Paradigm] to comply with the terms of this Agreement or with the rules, regulations or instructions given to [Paradigm] by [Westcor]; or . . . 4) any other actual or alleged act or omission by [Paradigm], or any agent, servant or employee of [Paradigm], whether or not occurring in connection with the issuance of a Policy." Ex. A (Agency Agreement) at § 14(a).

95.     Paradigm breached this duty by failing to obtain an updated payoff or perform an updated docket search prior to the Closing.

96.     As a direct and proximate result of Paradigm's failure to comply with its obligations under the Agency Agreement, Westcor incurred the Westcor Loss.

97.     Because Westcor paid the Westcor Loss, which was caused by Paradigm, Westcor is entitled to indemnification from the Westcor Loss from Paradigm.

98.     Accordingly, Westcor is entitled to a judgment in the amount of $120,807.25 against Paradigm, plus costs, expenses and attorneys' fees, and such other relief as may be just and proper.

WHEREFORE, Plaintiff Westcor Land Title Insurance Company respectfully requests that this Court enter judgment in the amount of $120,087.25 against Defendant Paradigm Title Group,

LLC, d/b/a Paradigm Abstract of PA LLC, plus costs, expenses and attorneys' fees; and award such

other relief as may be just and proper.

Respectfully Submitted,

**WESTCOR LAND TITLE INSURANCE COMPANY**
*By Counsel*

Dated: <u>December 17, 2018</u>         By: _____

Gregory J. Allard, Esquire
PA Attorney I.D. 92218
Law Offices of J. Scott Watson, P.C.
24 Regency Plaza
Glen Mills, Pennsylvania 19342
gregory.allard@jscottwatson.com
(610) 358-9600 - Phone
(610) 358-9601 - Fax
*Counsel for Plaintiff*

# *EXHIBIT A*

# ISSUING AGENCY AGREEMENT

This Issuing Agency Agreement, hereinafter referred to as "Agreement" made and entered into this 25th day of February, 2011, by and between WESTCOR LAND TITLE INSURANCE COMPANY, a California corporation (hereinafter referred to as "UNDERWRITER"), whose address is 201 N. New York Avenue, Ste. 200, Winter Park, Florida 32789 and PARADIGM TITLE GROUP, LLC (hereinafter referred to as "ISSUING AGENT");

## WITNESSETH:

In consideration of the mutual benefits accruing hereunder, and subject to the terms and conditions hereof, the parties hereto agree as follows:

### SECTION 1. APPOINTMENT OF ISSUING AGENT AND AUTHORITY

Subject to the conditions and limitations contained herein, UNDERWRITER hereby appoints ISSUING AGENT as its representative or agent to solicit applications for title insurance, collect premiums and issue and countersign title insurance policies, binders, commitments to insure, endorsements, guarantees and other authorized evidence of title insurance approved by UNDERWRITER (hereinafter collectively termed "Policies", each a "Policy"), in the designated geographical area (hereinafter termed "Territory") as set forth in SCHEDULE "A" attached hereto and made a part hereof.

Unless otherwise expressly set forth in SCHEDULE "A", and only to the extent expressed therein, the ISSUING AGENT shall be a non-exclusive agent within the Territory, and the UNDERWRITER shall not be restricted, in any way, from engaging in the business of title insurance, including without limitation, the solicitation of title insurance applications and the appointment of additional policy issuing agents within the Territory.

### SECTION 2. OBLIGATIONS OF ISSUING AGENT

ISSUING AGENT shall:

a) Maintain and operate a business office for the conduct of business as a title insurance agent, maintain adequately trained personnel of good moral character to originate and service such business, and remain actively engaged in such business;

b) Receive and process applications for title insurance and issue policies related thereto in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules, regulations and instructions of Underwriter, and/or those imposed by the Department of Insurance;

c) Obtain the consent of the UNDERWRITER prior to issuing any Policy in which the liability of the UNDERWRITER exceeds, or is expected to exceed, the Maximum Policy Limit as set forth in Schedule "A", and comply with any special conditions or instructions imposed by the UNDERWRITER in connection therewith;

d) Comply with all requirements established by UNDERWRITER and/or in accordance with recognized title insurance underwriting practices and/or those imposed by the Department of Insurance regarding search and examination of title and the clearance of objections or exceptions to title prior to binding the UNDERWRITER under any Policy;

e) Keep all funds, received by the ISSUING AGENT from any source in connection with transactions in which Policies of the UNDERWRITER are to be issued, in a federally insured financial institution, in an account separate from the ISSUING AGENT's individual accounts and designated as an "escrow" or "settlement funds" account, and disburse such funds only for the purposes for which the same were entrusted and reconcile all such accounts not less frequently than monthly. ISSUING AGENT shall forward such reconciliations to UNDERWRITER ~~on a monthly basis~~ requested. ISSUING AGENT acknowledges that all such funds constitute trust funds. ISSUING AGENT shall be solely liable for any and all losses arising by reason of ISSUING AGENT's improper, unauthorized, reckless or premature disbursement of any escrowed funds;

f) Not settle, compromise, handle, or resolve any claims or demands with respect to the UNDERWRITER's business or in connection with any policy(ies) of title issued by UNDERWRITER but, rather, shall immediately forward to UNDERWRITER, by express or overnight delivery, or facsimile transmission or hand delivery, all claims or demands of any kind or nature received by ISSUING AGENT with respect to the business of UNDERWRITER or in connection with any of the Policies of the UNDERWRITER, including without limitation, all legal process or regulatory inquiry

Initials

directed to the UNDERWRITER and received by ISSUING AGENT;

g) Maintain and carefully preserve for a period of not less than seven years following termination of this Agreement, all records, books, books of account, files, documents, correspondence, bank records, title evidence and material of all kinds in any way relating to the activities of ISSUING AGENT under this Agreement or to the Policies issued by ISSUING AGENT (hereinafter termed "Documentation") and make all Documentation available for inspection and examination by UNDERWRITER at any reasonable time;

h) Upon the request of UNDERWRITER, provide reasonable assistance in the defense of any claim in which the UNDERWRITER is involved either directly or as an insurer;

i) Where appropriate, conduct or participate in any settlements and closing of escrow transactions in which Policies of the UNDERWRITER are to be issued in accordance with prudent practice, requirements established by the UNDERWRITER, the instructions of the parties and the laws and governmental regulations applicable thereto, and shall not represent to the public that it is the agent of UNDERWRITER for the purpose of establishing and closing any such escrow,

j) Comply with licensing requirements, if any, and all other applicable laws and governmental regulations relating to the conduct of the business of ISSUING AGENT as established, from time to time, by appropriate governmental authorities, including, without limitation, the Departments of Insurance having jurisdiction over the Territory(ies) described in Schedule A.

k) ISSUING AGENT hereby assigns to UNDERWRITER all of its rights, claims and causes of action that occur under any Title Agency ERRORS AND OMISSIONS POLICY with opinions coverage that may be acquired by ISSUING AGENT. A copy of the policy shall be furnished to UNDERWRITER by ISSUING AGENT upon execution of this Agreement;

l) Provide UNDERWRITER with copies of all audits/reports as ISSUING AGENT may be required to make to the Department of Insurance or other regulatory agency, as well as reports regarding operations/ financial status of ISSUING    AGENT that stockholders and directors of the ISSUING AGENT would be permitted by law to see;

m) ISSUING AGENT shall at all times be responsible for any and all loss, costs, damages, expenses and fees including, but not    by way of limitation, reasonable attorney's fees, incurred by UNDERWRITER for ISSUING AGENT's.

    i) failure to comply with the terms of this agreement or with the rules, regulations or instructions given to ISSUING AGENT by UNDERWRITER;

    ii) failure to follow escrow or closing instructions provided to ISSUING AGENT in connection with any escrow handled by ISSUING AGENT;

    iii) any fraud, dishonesty or defalcation of any employee, officer, director, or agent of ISSUING AGENT;

    iv) any act or failure to act of an employee, officer, director, agent, or attorney of ISSUING AGENT which results in UNDERWRITER being liable for bad faith, unfair claim practices, or punitive damages;

n) ISSUING AGENT shall not, without the express written approval of UNDERWRITER and without having complied with any special conditions and/or instructions of UNDERWRITER, issue any policy(ies) of title insurance involving or pertaining to:

    i) policy(ies) covering the same transaction issued with aggregate fixed liability exceeding the Maximum Policy limit    shown on Schedule A.

    ii) mineral leasehold policy;

    iii) bondholder's policy;

    iv) policy dependent on a past or present governmental document purporting to alienate or vest any interest except a federal or state patent which is the source of private ownership,

    v) a policy providing insurance of priority over mechanic's liens where ISSUING AGENT has knowledge that such

Initials

Agency Form/Multistate Agreement
Revised 1/11/07

priority does not, in fact, exist;

vi)   policy insuring against damages resulting from land subsidence;

vii)  policy insuring title within an Indian Reservation;

viii) any policy wherein the underwriting risks do not comply with usual and customary practices and procedures, prudent underwriting principles and the underwriting rules and regulations established by UNDERWRITER and provided by UNDERWRITER to ISSUING AGENT;

ix)   any policy either written outside of, or covering property lying outside of, those geographical areas set out in Schedule "A" as the "ISSUING AGENT's Territory"

The items set forth hereinabove shall be referred to as, and known as, "Extra-hazardous Risk" issues/ matters.

## SECTION 3. COLLECTION OF PREMIUMS

ISSUING AGENT shall be responsible for collection of the gross amount of all fees and charges for title insurance with respect to Policies issued by ISSUING AGENT (hereinafter termed "Premiums")   ISSUING AGENT shall not permit any delay or deferral of the payment of Premiums except as expressly authorized by the UNDERWRITER.   Upon collection of premiums by ISSUING AGENT, the UNDERWRITER shall be deemed the owner of the entire amount thereof and ISSUING AGENT shall hold and maintain such Premiums, as trustee for the UNDERWRITER, strictly in accordance with the terms of this Agreement

## SECTION 4.  REPORTING AND REMITTANCE PROCEDURES

a)   Monthly, or at such other interval as required by UNDERWRITER, ISSUING AGENT shall report on settlements and closings of transactions in which Policies of the UNDERWRITER are to be issued by forwarding the same to the UNDERWRITER;

b)   Upon specific request, ISSUING AGENT shall   forward _to the UNDERWRITER copies of all Policies issued by ISSUING AGENT promptly and as directed by the UNDERWRITER;

c)   ISSUING AGENT shall remit to UNDERWRITER the full amount of the Premiums (less Agent retention as defined in paragraph 6 hereof) in such manner as directed by the UNDERWRITER;

d)   Except as otherwise indicated or directed by UNDERWRITER, all reports and remittances required to be made by ISSUING AGENT to UNDERWRITER under this Agreement shall be sent to:

**WESTCOR LAND TITLE INSURANCE COMPANY**
**201 N. New York Avenue**
**Suite 200**
**Winter Park, Florida 32789**

e)   Keep safe all forms provided to ISSUING AGENT by UNDERWRITER, maintain a policy register showing disposition of    such forms, and submit to UNDERWRITER, in writing, the names of all employees of ISSUING AGENT authorized to    countersign the policies of UNDERWRITER.   ISSUING AGENT hereby assumes liability for loss or damage suffered by    UNDERWRITER by reason of ISSUING AGENT's wrongful or negligent use or storage of such forms.

## SECTION 5.  DELINQUENT REMITTANCES

All remittances which the ISSUING AGENT is required to make to UNDERWRITER under this Agreement shall be deemed delinquent if not paid within sixty (60) days following the date of the remittance invoice or other demand therefore given to ISSUING AGENT by UNDERWRITER

~~Interest on delinquent remittances will accrue at the rate of two (2%) percent over the prime interest rate of BankAmerica, as changed from time-to-time.~~  Nothing contained herein shall constitute a waiver by UNDERWRITER of any of its rights or remedies arising from the failure of ISSUING AGENT to remit in accordance with the terms hereof, nor shall the exercise of any such rights or remedies affect the right of UNDERWRITER to recover the full amount of any delinquent remittances together

Initials

Page 3 of 11

~~with interest thereon~~ from ISSUING AGENT.

## SECTION 6. ISSUING AGENT'S COMMISSION

In full consideration for the services and efforts of ISSUING AGENT with respect to the solicitation of title insurance business, the issuance of Policies and all other acts required to be performed by ISSUING AGENT hereunder, ISSUING AGENT shall be entitled to retain as commission such portion of Premiums actually collected (hereinafter termed "Commission") as is designated in Schedule "A" after deduction for the cost of any reinsurance, coinsurance and premium tax increase as set forth in Paragraph 12 hereof

## SECTION 7. TITLE INSURANCE RATES

ISSUING AGENT shall only charge those title insurance rates consistent with all rate filings, rules, and/or regulations, or as otherwise promulgated by the applicable state department of insurance.

## SECTION 8. LIMITATION OF ISSUING AGENT'S AUTHORITY

Notwithstanding any provision hereof, ISSUING AGENT's authority under this Agreement is expressly limited to the issuance of Policies and the collection of Premiums as set forth hereinabove. Without limitation, ISSUING AGENT is not authorized and shall not purport to:

    a)  Incur any obligation or liability on behalf of the UNDERWRITER other than as expressly set forth in this Agreement;

    b)  Without written approval of UNDERWRITER adjust or otherwise settle or attempt to settle any claim for loss for which UNDERWRITER may become liable or engage counsel to represent UNDERWRITER or the insured.

    c)  Accept service of process on behalf of the UNDERWRITER;

    d)  Engage in any business in the name of UNDERWRITER except as specifically authorized herein;

    e)  Appoint any sub-agent or authorize any person to issue Policy of the UNDERWRITER,

    f)  Receive in the name of the UNDERWRITER any funds, including escrow and settlement funds

## SECTION 9. COVENANTS OF AGENT

ISSUING AGENT covenants and agrees with UNDERWRITER that ISSUING AGENT shall not without the express written consent of UNDERWRITER:

    a)  Participate in any litigation or other activity which is detrimental to the interests of UNDERWRITER;

    b)  Complete or alter forms furnished by the UNDERWRITER except pursuant to instructions promulgated by UNDERWRITER;

    c)  Utilize UNDERWRITER's forms for transactions not involving the issuance of UNDERWRITER's Policies;

    d)  Issue any Policy with respect to a transaction in which ISSUING AGENT, or any business associate, or family member, has an interest,

    e)  Insure, or commit to insure, any property for an amount other than the fair market value of the estate or interest to be insured or the amount of the security interest, or portion thereof secured thereby,

    f)  Accept any indemnity agreement from any legally recognizable entity for the purpose of insuring over any matter wherein the face value of said matter is in excess of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS.

## SECTION 10. REPRESENTATIONS OF ISSUING AGENT

As an inducement to this Agreement ISSUING AGENT represents to UNDERWRITER as follows:

    a)  The facts and information contained in the application and any supporting document submitted by ISSUING AGENT to UNDERWRITER are true and correct in every material respect and there are no material omissions

Initials

contained therein,

b) The execution and performance of this Agreement by ISSUING AGENT is not in conflict with or in violation of any contract, undertaking, obligation, or order or decree of any court or regulatory agency, under which ISSUING AGENT is bound;

These representations shall be deemed continuing and shall remain true and correct at all times during the term of this Agreement.

## SECTION 11. COVENANTS OF THE UNDERWRITER

UNDERWRITER covenants with ISSUING AGENT that UNDERWRITER shall:

a) Issue written rules and instructions, as UNDERWRITER deems necessary for the guidance of ISSUING AGENT in connection with the conduct of business of ISSUING AGENT as contemplated hereunder;

b) Supply ISSUING AGENT, at UNDERWRITER's expense, with all forms required by UNDERWRITER for the transaction of business under the terms of this Agreement;

c) Provide prompt advice to ISSUING AGENT of its underwriting determinations in connection with questions of risk submitted to UNDERWRITER by ISSUING AGENT and arising from transactions in which ISSUING AGENT has issued or expects to issue Policies of the UNDERWRITER;

## SECTION 12. REINSURANCE, COINSURANCE AND PREMIUM TAX ESCALATION

a) Whenever it is necessary, required or deemed advisable, in the sole opinion of the UNDERWRITER, to purchase reinsurance or coinsurance on any Policy, the cost of such reinsurance or coinsurance for the amount of liability in excess of the Maximum Policy Limit set forth in Schedule "A" shall be deducted from Premiums in respect of such Policy before calculating the Commission to which ISSUING AGENT shall be entitled

b) ISSUING AGENT shall not be entitled to any Commission in connection with reinsurance or coinsurance ceded to the UNDERWRITER by any other title insurer with respect to property located in the Territory

c) Any increases in or additions to the taxes imposed on the UNDERWRITER with respect to Premiums, whether or not designated as premium taxes, over the taxes existing at the date hereof, shall be deducted from the Premiums before calculating the Commission to which the ISSUING AGENT shall be entitled.

## SECTION 13. GROSS PREMIUMS – SCHEDULE OF PAYMENTS

a) ISSUING AGENT may charge any fees it desires of whatever character for its services which do not impose an obligation on UNDERWRITER, including the search and examination of title (which are necessary and integral parts of any underwriting function) in transactions where title insurance is being issued, so long as same are permitted by law and are not inconsistent with any rate filing or any rules or regulations of the State Department of Insurance or other regulatory agency.

b) ISSUING AGENT may make such charge as ISSUING AGENT desires after submitting such charge to UNDERWRITER for posting and filing as required by law and provided any such charge does not violate the provisions of any law or regulation, and any such charge shall include UNDERWRITER's gross premium (risk rate) for title insurance above referred to, and in the event the state or other governmental body fixes the rate, UNDERWRITER's gross premium charge (risk rate) for title insurance is a part of such governed or fixed rate.

## SECTION 14. LIABILITY OF ISSUING AGENT; INSURANCE

a) ISSUING AGENT shall be liable to the UNDERWRITER for, and hereby agrees to indemnify the UNDERWRITER against all loss, cost, or expense, including attorneys' fees and costs of litigation, incurred by the UNDERWRITER and arising from:

    1) fraud, conduct that would constitute a breach of this Agreement, or gross negligence of ISSUING AGENT or any agent, servant or employee of ISSUING AGENT; or

    2) the failure of ISSUING AGENT to comply with the terms of this Agreement or with the rules, regulations or

Initials

instructions given to ISSUING AGENT by UNDERWRITER; or

3) any loss or misapplication of funds, documents or other things of value by ISSUING AGENT or any agent, servant or employee of ISSUING AGENT; or

4) any other actual or alleged act or omission by ISSUING AGENT, or any agent, servant or employee of ISSUING AGENT, whether or not occurring in connection with the issuance of a Policy.

b) ISSUING AGENT shall maintain, at ISSUING AGENT's expense, Title Insurance Agent's Errors and Omissions insurance, including coverage for opinions of title, in the minimum face amount of $1,000,000.00 in such form and with such carrier acceptable to the UNDERWRITER. Upon demand, ISSUING AGENT shall furnish proof of such insurance coverage to UNDERWRITER. ISSUING AGENT agrees to immediately notify its insurance carriers in the event of any covered claim.

### SECTION 15. TITLE INSURANCE UNDERWRITING

The ISSUING AGENT shall not issue any Policy binding the UNDERWRITER unless ISSUING AGENT has determined the insurability of the subject title in accordance with the instruction, guidelines and standards established by the UNDERWRITER, from time to time, and promulgated in the manuals, bulletins, and other material directed to the ISSUING AGENT or in accordance with recognized title insurance underwriting practices. In the event of a conflict, the written material from UNDERWRITER will prevail. The authority of the ISSUING AGENT to determine insurability is strictly limited by such instructions, guidelines and standards and ISSUING AGENT shall not assume any extraordinary risk or undertaking on behalf of the UNDERWRITER without the express written consent of the UNDERWRITER.

### SECTION 16. EXAMINATION OF ISSUING AGENT'S DOCUMENTATION

The UNDERWRITER shall have the right to examine all trust and escrow accounts of ISSUING AGENT and to review any other documentation of ISSUING AGENT. In the event ISSUING AGENT refuses to permit UNDERWRITER to conduct such an examination, UNDERWRITER shall have the right to seek equitable remedies, including injunctive relief and the appointment of a receiver, and ISSUING AGENT shall not assert that UNDERWRITER otherwise possesses an adequate remedy at law. The rights of UNDERWRITER under this provision shall survive termination of this Agreement.

### SECTION 17. TERMINATION

a) TERM

This Agreement shall continue in full force and effect for the term set forth in Schedule "A" hereof and upon the expiration of the term, or in the event a term is not specified in Schedule "A", this Agreement shall continue until terminated by either party upon thirty (30) days notice in writing to the other party at its principal office or such other office as designated by the parties.

b) IMMEDIATE TERMINATION

This agreement may be terminated by UNDERWRITER immediately upon notice in writing to ISSUING AGENT if ISSUING AGENT:

1) Commits a breach of any term, condition or representation contained in this Agreement,

2) Exercises, or attempts to exercise, any authority in conflict with this Agreement;

3) Commits any act of fraud or misconduct, or becomes insolvent

### SECTION 18. OBLIGATIONS OF ISSUING AGENT FOLLOWING TERMINATION

In the event of termination for any reason whatsoever, all policies and forms in the possession of ISSUING AGENT shall be immediately delivered by ISSUING AGENT to UNDERWRITER. ISSUING AGENT shall account for and pay to UNDERWRITER immediately all Premiums (including but not limited to any Premiums, which ISSUING AGENT has collected pursuant to Policies not yet issued), and all other outstanding indebtedness owed by ISSUING AGENT to UNDERWRITER Further ISSUING AGENT shall advise and cooperate fully as directed by UNDERWRITER in the completion of all such undertakings and transactions. Termination shall not discharge any liability or obligation which existed prior thereto.

Initials

### SECTION 19. ISSUING AGENT INDEPENDENT CONTRACTOR

ISSUING AGENT is an independent contractor and not an employee of UNDERWRITER and shall be solely responsible for the payment of any federal, state or local taxes relating to the income or compensation of ISSUING AGENT and for compliance with all laws and regulations relating to the business of ISSUING AGENT

### SECTION 20. NOTICES

Any notice required or permitted to be given under this Agreement or otherwise, by either party to the other, shall be deemed given -when forwarded to such party by certified mail or express delivery at the address shown below or such other address hereafter designated in writing:

UNDERWRITER

Westcor Land Title Insurance Company

201 N. New York Avenue, Suite 200

Winter Park, Florida 32789

ISSUING AGENT

PARADIGM TITLE GROUP, LLC

3 Jocama Boulevard, Suite 200B

Old Bridge, NJ 08857

### SECTION 21. ASSIGNMENT PROHIBITED

This Agreement and any rights or interest arising hereunder shall not be transferred or assigned by either party, provided, however, that this Agreement shall inure to the benefit of any successor to the UNDERWRITER. ISSUING AGENT shall notify UNDERWRITER of any change in ownership of ISSUING AGENT. UNDERWRITER shall have the option in its sole discretion to terminate relationship due to change in ownership or continue relationship under this contract.

### SECTION 22. NAME OF UNDERWRITER

ISSUING AGENT shall not use any name, designation, emblem or logo of the UNDERWRITER or its parent or affiliates, in any way, except with the express written consent of UNDERWRITER and only to the extent of such consent, provided, however, that letterhead, forms, advertising and display signs used by the ISSUING AGENT in connection with the business of ISSUING AGENT, as contemplated hereunder, may indicate that ISSUING AGENT is a policy issuing agent of the UNDERWRITER.

### SECTION 23. LAW TO GOVERN

This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Florida.

### SECTION 24. DURATION OF THIS AGREEMENT

This Agreement shall commence as of the day and date first hereinabove mentioned or as otherwise shown on Schedule "A" attached hereto, and shall continue in full force and effect until otherwise terminated by the parties hereto pursuant to, and in accordance with, the terms and conditions set forth herein pertaining to the termination of this Agreement.

### SECTION 25. NON-WAIVER BY PRINCIPAL

If, at any time, ISSUING AGENT is in breach of any provisions of this Agreement and UNDERWRITER fails to or elects not to pursue remedies for said breach, it is in no case a waiver of any provisions of this Agreement. In no case shall acceptance of premium cause a waiver of any rights of UNDERWRITER.

### SECTION 26. ENTIRE AGREEMENT; PRIOR AGREEMENTS

This Agreement, along with any exhibits and schedules is the entire agreement between ISSUING AGENT and UNDERWRITER and no modifications shall be valid unless made in writing and signed by both parties.

Initials

Page 7 of 11

## SECTION 27. INVALID PROVISIONS

If any portion of this Agreement is held invalid, illegal or unenforceable the remainder of the Agreement's provisions are not affected by the illegal or unenforceable terms. If necessary, any such provision(s) are severable.

## SECTION 28. ATTORNEY'S FEES, COSTS, VENUE

Should either party be in default of this Agreement, the defaulting party shall pay all costs and expenses, including reasonable attorneys' fees which arise from enforcement of the terms of the Agreement. The parties agree that in the event litigation arises, venue of any proceeding will be selected by UNDERWRITER.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year above written.

WESTCOR LAND TITLE INSURANCE COMPANY

By: _____

Title: _____

ISSUING AGENT

By: _____

Print Name: Jason Walters

Title: President

~~Personal Guaranty: In order to induce UNDERWRITER to enter into this agreement the undersigned jointly and severally guaranty full and faithful performance of the terms and obligations of this agreement. The undersigned hereby indemnify and hold harmless UNDERWRITER from any and all loss it may sustain by virtue of ISSUING AGENT failing to perform its duties under this agreement.~~

_____
Date

By: _____

Print Name: _____

Initials

Page 8 of 11

## SCHEDULE A

Attached to and made a part of Agreement between WESTCOR LAND TITLE INSURANCE COMPANY (hereinafter referred to as "UNDERWRITER") and PARADIGM TITLE GROUP, LLC, hereinafter referred to as "ISSUING AGENT").

## EFFECTIVE DATE OF AGREEMENT, DESCRIPTION OF ISSUING AGENT'S TERRITORY, RISK LIMITS, TITLE INSURANCE RATES, COMMISSIONS, AND CANCELLATION

1.  Effective date of this Agreement. JANUARY 27, 2011

2.  ISSUING AGENT's territory shall be those counties within the State of New Jersey wherein ISSUING AGENT has been duly licensed to conduct the business of title insurance by the appropriate Insurance Department

3.  MAXIMUM POLICY LIMIT. ISSUING AGENT shall not insure any risk in excess of $1,000,000.00 Dollars without prior approval of UNDERWRITER.

4.  DURATION: This Agreement shall be in effect for a period of N/A years, commencing on the date set forth in Paragraph 1 of this Schedule A, unless sooner terminated as otherwise provided for in the Agreement.

5.  COMMISSIONS. ISSUING AGENT shall be entitled to retain a commission on all Policies issued by ISSUING AGENT for UNDERWRITER, which commission shall be 85 percentage of the title insurance rates set forth in Section 13 hereof. ISSUING AGENT shall remit a minimum of $ TBD per year to UNDERWRITER.

6.  CANCELLATION. This Agreement may be canceled by either party hereto, other than as set forth in Section 17 of the Agreement, by written notice of intention to cancel sent by registered or certified United States mail to the other party thereto at its last known business address. Any such cancellation shall take effect at the expiration of THIRTY (30) DAYS after the mailing of such notice.

Initials

Page 9 of 11

## SCHEDULE B

Attached to and made a part of Agreement between WESTCOR LAND TITLE INSURANCE COMPANY (hereinafter referred to as "UNDERWRITER") and PARADIGM TITLE GROUP, LLC (hereinafter referred to as "ISSUING AGENT").

## ISSUING AGENT'S FINANCIAL CONDITION AND

## INSURANCE COVERAGE

1.   ISSUING AGENT shall, upon request, provide UNDERWRITER with a balance sheet and income statement, as of the close of ISSUING AGENT's most recent fiscal year or at such other times as requested by UNDERWRITER.

2.   Pursuant to Section 14 of this Agreement, ISSUING AGENT agrees that it will obtain and maintain the following insurance coverage in a form acceptable to UNDERWRITER·

**The following provisions as indicated and initialed are applicable to this Agreement.**

(X)   Title Insurance Agent's Errors and Omissions Policy with Opinion of Title Coverage with limits of not less than ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS.

( )   Commercial blanket bond or similar fidelity bond covering its officers and employees with limits of not less than $_____

( )   Lawyer's Professional Liability insurance with limits of not less than $___ ___ __ __ _____ _____

( )   Such other insurance or bonding as required by the laws of the state or territory where ISSUING AGENT is engaged in business.

Any of the above policies shall provide that at least ten (10) days' prior notice of cancellation shall be given to UNDERWRITER. ISSUING AGENT agrees to furnish UNDERWRITER with evidence of compliance with this provision, including a copy of said policy (ies) and every renewal thereof.

Initials

Page 10 of 11

## SCHEDULE C

Attached to and made part of Agreement between WESTCOR LAND TITLE INSURANCE COMPANY (hereinafter referred to as "UNDERWRITER") and PARADIGM TITLE GROUP, LLC, hereinafter referred to as "ISSUING AGENT").

## Endorsement and CSL Charges

1. ISSUING AGENT shall be entitled to retain the entire charge on all non-surcharge of premium endorsements.

2. UNDERWRITER shall be entitled to the entire charge on all Closing Service Letters and ISSUING AGENT shall remit said charge to UNDERWRITER in accordance with section 4 of the Agreement.

3. ISSUING AGENT shall be entitled to retain a commission on all surcharge of premium endorsements, which commission shall be 85 percentage of the charge of the endorsement.

IN WITNESS WHEREOF, the parties have executed this agreement the day and year first above written.

BY: _____          BY: _____
UNDERWRITER                              ISSUING AGENT

Initials

Agency Form/Multistate Agreement
Revised 1/11/07